

EXHIBIT A-1

IN THE COMMON PLEAS COURT OF GREENE COUNTY, OHIO
GENERAL DIVISION

| | | |
|---|---|---|
| PROBITY ENTERPRISES, INC.<br>4031 Colonel Glenn Hwy,<br>Beavercreek, OH 45431 | : <br> : <br> : | CASE NO. **2019 C V 0 1 5 1**<br><br>JUDGE<br>BUCKWALTER |
| Plaintiff, | : | **COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE** |
| v. | : | **RELIEF** |
| LEGION LOGISTICS, LLC.<br>600 Meijer Drive, Suite 304,<br>Florence, KY 41042 | : <br> : <br> : | **JURY TRIAL REQUESTED** |
| Defendant. | : | |

Plaintiff Probity Enterprises, Inc. ("Probity") brings this Complaint against Defendant Legion Logistics LLC ("Legion"), and states and alleges the following:

### PARTIES, JURISDICTION, AND VENUE

1. Probity is an Ohio corporation that maintains its principal place of business at 4031 Colonel Glenn Hwy, Beavercreek, OH 45431.

2. Legion is a Kentucky limited liability company that maintains its principal place of business at 600 Meijer Drive, Suite 304, Florence, KY 41042

3. Jurisdiction in this Court is proper under Ohio Rev. Code §2305.01. This action arises under the laws of the State of Ohio, and the parties' TNS Network Provider

EXHIBIT A-1

Agreement[1] ("TNS Network Provider Agreement" or "Agreement") provides for the application of Ohio law. TNS Network Provider Agreement, ¶ 10. Legion regularly engages in business in Ohio and the harm sustained by Probity from Legion's conduct was incurred in Ohio. All claims arise from a common set of facts and circumstances.

4. Venue for this action is proper pursuant to Ohio R. Civ. P. 3(C)(3). Legion conducted the activity that gives rise to Probity's claims for relief in Greene County.

## PROBITY'S BUSINESS

5. Probity is a global supply chain company that provides transportation logistics services. Probity developed a patent pending transportation process, the Transportation Network Solution (the "TNS Service").

6. The TNS Service utilizes transportation service providers, e.g., trucking and logistics companies, which are individuals and entities that have a contract with Probity to provide transportation services to the TNS Network.

7. A TNS Network Provider is a truckload transportation services provider that entered into TNS Network Provider Agreements with Probity to become an authorized TNS service transportation provider for TNS Shippers. TNS Shippers contract with Probity to utilize the TNS service.

8. The overall TNS Network is the group of TNS Network Providers that contract with Probity and are authorized to provide truckload transportation services to TNS Shippers.

---

[1] A redacted version of the TNS Network Provider Agreement is attached as Exhibit A. Concurrently with the filing of this Complaint, Probity is filing a Motion to File under Seal, which if granted will allow Probity to file an un-redacted version of the TNS Network Provider Agreement under seal with the Court.

9. The TNS Service or TNS Program is a logistics service that utilizes Probity's patent pending process that enables a Shipper to set their own rates and tender shipments from their own transportation management systems. The TNS has many similarities of Priceline but is tailored for the transportation industry.

10. The TNS is a patent pending innovative and proprietary process that allows a TNS Shipper to select and modify transportation rates for truckload services utilizing the TNS Benchmark Rate Tables based on various criteria and tender a request for truckload transportation services to the TNS Network. TNS Shippers contract directly with Probity for use of the TNS according to the parameters of the TNS Service Guide.

11. After a TNS Shipper tenders a request for transportation services, the TNS Network will accept or reject the TNS Shipper's request based on the cost and service requirements of each truckload transportation service request.

12. When a TNS Shipper's request is accepted, Probity aggregates the data to provide the TNS Shipper a "Management Report," which contains the ship date, deliver date, origin, destination, and other relevant transportation details per the TNS Shipper's requirements.

**PROBITY'S AGREEMENT WITH LEGION**

13. Legion is a logistics services provider that executed a TNS Network Provider Agreement with Probity on September 3, 2016, and agreed to provide trucking and logistics services as a TNS Network Provider.

14. The TNS Network Provider Agreement provides that Legion and Probity will provide logistics services upon the terms and conditions set forth in the Agreement. TNS Network Provider Agreement, ¶ 1.

15. Under the terms of the TNS Network Provider Agreement, Probity is solely responsible for marketing the TNS Service to customers and managing the relationships with TNS Shippers.

16. Legion agreed to be the primary TNS Network Provider for the United States, Mexico, and Canada. Id., ¶ 2(c).

17. Probity is also responsible for working with TNS Shippers to define system processes for the issuance of truckload transportation service requests through the TNS Program. Id., ¶ 2(b).

18. The TNS Network Provider Agreement states that Legion will receive truckload transportation tender requests, electronically or manually, from TNS Shippers and either accept or reject the requested services. Id., ¶ 2(d) and (g).

19. Under the terms of the TNS Network Provider Agreement, Legion is solely responsible for the allocation of accepted truckload transportation service requests to Legion's contracted carriers in order to carry-out the requested transportation per the TNS Shipper's cost and service requirements. Id., ¶ 2(h).

20. Probity and Legion agreed not to disclose to any person or entity any Confidential Information, which includes the procedures, practices, dealings, or other information concerning the business, finance, transaction or affairs of the other that is disclosed attendant to the TNS Network Provider Agreement or which constitutes a trade secret under applicable law, including any verbal or written information or other documentation.

21. The TNS Network Provider Agreement provides that Confidential Information includes, among other things, information concerning rates, charges, origins, destinations, products and sales or marketing information. Id., ¶ 7. Confidential Information

includes all information pertaining to the patent pending TNS process, TNS Benchmark Rate Table and TNS Network Provider information.

22. The term of the TNS Network Provider Agreement was (36) thirty-six months from the date of the execution of the Agreement. Id., ¶ 3.

23. Probity and Legion executed a TNS Network Provider Agreement Addendum (the "TNS Network Provider Agreement Addendum") on April 26, 2017. The TNS Network Provider Agreement Addendum extended the term of the initial September 3, 2017, Agreement through December 31, 2021. TNS Network Provider Agreement Addendum, ¶ 1.

## LEGION IMPROPERLY BACK SOLICITS PROBITY'S CUSTOMERS AND BREACHES THE PARTIES' AGREEMENTS

24. On January 23, 2018, Probity entered into a contract (the "Customer 1 Contract") with Customer 1[2] to provide Probity's TNS Service to Customer 1. Accordingly, Customer 1 became a customer of Probity's TNS Service, also known as a TNS Shipper. The total TNS Revenue opportunity with Customer 1 was $15 million annually.

25. On June 6, 2018, Probity entered into a contract (the "Customer 2 Contract") with Customer 2 to provide Probity's TNS Service to Customer 2. Accordingly, Customer 2 became a customer of Probity's TNS Service, also known as a TNS Shipper. The total TNS Revenue opportunity with Customer 2 was $17 million annually.

26. Legion knew that Customer 1 and Customer 2 contracted with Probity for its TNS Service and were TNS Shippers. Legion had seen the executed contracts with Customer 1 and Customer 2.

---

[2] The identities of Probity's customers are confidential and constitute trade secrets under Ohio Rev. Code § 1333.61(D). Concurrently with the filing of this Complaint, Probity is filing a Motion to File under Seal, which if granted will allow Probity to file, marked as Exhibit B, a document listing the identity of Customer 1 and Customer 2 under seal with the Court.

27. In November 2018, Customer 1 issued its 2019 Request for Proposals ("RFP") for truckload transportation services. Customer 1's RFP was sent mistakenly to Legion, rather than to Probity. For more than a month, Legion failed to disclose to Probity that it possessed the Customer 1's 2019 RFP that should have gone to Probity.

28. Instead of notifying Probity of Customer 1's 2019 RFP and allowing Probity to continue to manage the relationship with Customer 1 as Legion agreed it would in accordance with the terms of the TNS Network Provider Agreements, Legion used the confidential information from Probity's existing contractual agreement with Customer 1, TNS rates, TNS profit margins and TNS process Rules Engine software and Benchmark Rate Table to directly submit a bid to Customer 1.

29. On December 28, 2018, Customer 1 notified Probity that Customer 1 did not select Legion's bid, which Legion submitted in response to Customer 1's 2019 RFP.

30. On December 28, 2018, Probity learned for the first time that Legion improperly "back solicited" Probity's business opportunity with Customer 1 by submitting a bid to Customer 1 directly.

31. Had Probity been made aware of the business opportunity with Customer 1, Probity would have leveraged its existing contract with Customer 1 and Probity's other TNS Network Providers to win Customer 1's business responsive to the 2019 RFP.

32. Legion's conduct precluded Probity from obtaining $10 million in contractual truckload opportunities from Customer 1 in 2019.

33. Legion's flagrant breach of its contractual obligations required Probity to terminate the Agreements with Legion which left Probity without the services of its primary TNS Network Provider.

34. Legion's actions -- breach of the TNS Network Provider Agreement, caused Probity to delay the performance of its contract with Customer 2 while Probity recruited and contracted with a new primary TNS Network Provider.

35. Legion's actions caused Probity to incur additional and unnecessary expenses and to lose significant business opportunities with Customer 2 during the peak holiday retail season.

**LEGION FAILS TO PROVIDE REQUIRED DOCUMENTATION TO PROBITY AND CONTINUES TO BREACH THE PARTIES' AGREEMENTS**

36. The TNS Network Provider Agreement provides that Legion is to issue to Probity all necessary documentation that identifies acceptance of a truckload transportation service request by Legion, including the original bill of lading or shipping order, delivery receipt and Legion's invoice and that Legion is to issue Management Reports to Probity for each TNS Shipper. Id., ¶ 2(n) and (o).

37. The TNS Network Provider Agreement provides that Legion is to pay its contract carrier and issue an invoice for this service directly to Probity and that Probity is responsible for processing the invoices issued from Legion to Probity and subsequently issuing an invoice to the TNS Shipper. Id., ¶ 2(i) and (k).

38. Probity and Legion agreed to an allocation of net revenues. Id., ¶ 4(a).

39. In October 2018, Probity requested a report that detailed the profit per shipment that is necessary for performance of the revenue allocation provision of the TNS Network Provider Agreement. Id., ¶¶ 2(i), 4(a). Legion provided Probity a report on October 5, 2018, that showed an average margin of shipment billings that they had handled through October 5, 2018. Legion recognized that the net margin was significantly below the target gross margin for the handling of Probity's TNS shipments.

40. Probity requested from Legion on multiple occasions that they provide the actual back-up documentation of carrier cost information (e.g., Copy of the Carrier Invoice), which Legion is required to provide under paragraph 2(i) of the TNS Network Provider Agreement. Legion would not provide Probity the requested documentation that would validate the actual carrier cost incurred on each shipment. Probity notified Legion that they would no longer pay any invoices until they provided the carrier cost documentation.

41. Legion continues to withhold the requested documentation as of the date of filing of this Complaint.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

42. Probity incorporates by reference the allegations of paragraphs 1 through 41 as if fully set forth.

43. The TNS Network Provider Agreement and TNS Network Provider Agreement Addendum (collectively, the "Agreements") are valid and enforceable contracts between Probity and Legion.

44. Legion agreed to provide logistics services upon the terms and conditions of the Agreements entered into with Probity.

45. Under the TNS Network Provider Agreement, while Legion agreed to be the primary TNS Network Provider, Legion agreed that Probity would maintain the sole responsibility for marketing the TNS Program and managing the relationships with all TNS Shippers, and for working with TNS Shippers to issue truckload transportation service requests through the TNS Program to the TNS Network. TNS Network Provider Agreement, ¶ 2(a), (b), and (c).

46. Legion improperly "back solicited" Probity's business opportunity with Customer 1 and failed to allow Probity to maintain the sole responsibility for marketing the TNS Program and managing the relationships with all TNS Shippers. Probity went through an extensive process to become an approved vendor for Customer 1 that included the set-up of Probity in their Enterprise Management System (SAP). Legion fully understood that their involvement with Customer 1 was as a contracted TNS Network Provider of Probity

47. Under the TNS Network Provider Agreement, Legion agreed to not disclose to any person or entity any Confidential Information, which includes the procedures, practices, dealings, or other information concerning the business, finance, transaction or affairs of the other that is disclosed attendant to the TNS Network Provider Agreement or which constitutes a trade secret under applicable law, including any verbal or written information or other documentation.

48. Legion used the confidential information from Probity's patent pending TNS process and Probity's TNS contract with Customer 1 to directly submit a bid to Customer 1 in violation of the TNS Network Provider Agreement. Probity had shared with Legion concerns over their ability to provide service to Customer 1. Legion was losing over $225,000 in spot quote freight opportunities from Customer 1 on a monthly basis and not meeting Probity's TNS benchmarks for profitability.

49. Under the TNS Network Provider Agreement, Legion is to issue to Probity all necessary documentation that identifies acceptance of a truckload transportation service request by Legion, which includes the original bill of lading or shipping order, delivery receipt and Legion's invoice and that Legion is to issue Management Reports to Probity for each TNS Shipper. Id., ¶ 2(n) and (o).

EXHIBIT A-1

50. Legion has withheld and continues to withhold back-up documentation of carrier cost information, which Legion is required to provide under paragraph 2(i) of the TNS Network Provider Agreement.

51. Legion materially breached the terms of the Agreements that Legion entered into with Probity

52. Legion's breaches of the Agreements caused Probity to sustain damages.

## SECOND CAUSE OF ACTION
### (Tortious Interference with a Contract)

53. Probity incorporates by reference the allegations of paragraphs 1 through 52 as if fully set forth.

54. Legion tortiously interfered with Probity's contractual relationship with Customer 1.

55. Legion had knowledge of Probity's contract with Customer 1 to provide the TNS Service.

56. Rather than honoring its contractual obligation to provide logistics services under the terms of the Agreements as the primary TNS Network Provider in support of Probity's contract with Customer 1, Legion interfered with Probity's business opportunity with Customer 1 by failing to disclose the Customer 1 2019 RFP.

57. Legion directly submitted a bid to Customer 1.

58. As a direct and proximate result of Legion's submitting a bid, Probity was unable to bid on the 2019 RFP and its relationship with Customer 1 was damaged. Among other things, Probity was unable to obtain the volume of additional work for Customer 1 in 2019 that it had been discussing with Customer 1.

EXHIBIT A-1

59. Legion interfered with Probity's contract with Customer 1 and precluded Probity from obtaining $10 million in contractual truckload opportunities from Customer 1 in 2019.

60. Legion lacks justification or privilege for its conduct.

### THIRD CAUSE OF ACTION
### (Misappropriation of Trade Secrets)

61. Probity incorporates by reference the allegations of paragraphs 1 through 60 as if fully set forth.

62. Legion misappropriated trade secrets and confidential information from Probity in violation of the Agreements and the Ohio Uniform Trade Secrets Act, Ohio Rev. Code §§ 1333.61, et seq.

63. Legion's misappropriation caused Probity to sustain damages.

64. Legion had access to the confidential, proprietary, and trade secret information of Probity, which is protected under the Ohio Uniform Trade Secrets Act, Ohio Rev. Code §§ 1333.61, et seq.

65. The methods and processes for truckload transportation service sales through the TNS Rules Engine software program, Probity's Benchmark Rate Table, technical knowledge of the pending patent and product development, among other things, constitute trade secrets within the meaning of Ohio Rev. Code § 1333.61(D).

66. Probity took steps reasonable under the circumstances to maintain the secrecy of its confidential, proprietary, and trade secret information. TNS Network Provider Agreement, ¶7.

67. Upon information and belief, contrary to the terms of the TNS Network Provider Agreement, Legion misappropriated trade secrets and confidential information from

11

Probity, and Legion utilized such information in an attempt to usurp Probity's business opportunity with Customer 1.

68. Upon information and belief, Legion willfully and maliciously misappropriated Probity's trade secrets.

69. As a direct and proximate result of Legion's breach of the Agreements and the Ohio Uniform Trade Secrets Act, § 1333.61, et seq., Probity suffered damages, including but not limited to lost profits, relating to the use of its confidential, proprietary, and trade secret information.

## PRAYER FOR RELIEF

WHEREFORE, Probity prays for judgment in its favor and against Legion on all Causes of Action as follows:

1. Enter judgment against Legion and in favor of Probity on all causes of action;

2. Permanently enjoin Legion from using, disclosing, or publishing any trade secrets of Probity;

3. Award to Probity damages and lost profits in such amount as proven in this action;

4. Award to Probity its attorneys' fees pursuant to Ohio Rev. Code § 1333.64;

5. Award to Probity punitive damages;

EXHIBIT A-1

6. Award to Probity interest and costs; and

7. Award to Probity such further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ B. Wright*

D. Jeffrey Ireland (0010443)
Brian D. Wright (0075359)
FARUKI IRELAND COX RHINEHART &
DUSING PLL
110 North Main Street
Suite 1600
Dayton, OH 45402
Telephone: (937) 227-3700
Telecopier: (937) 227-3717
Email: djireland@ficlaw.com

Attorney for Plaintiff
Probity Enterpises, Inc.

**JURY DEMAND**

Plaintiff demands trial by jury on all claims and defenses so triable in this action.

*/s/ D. J. Ireland by B. Wright 0075359*
D. Jeffrey Ireland

1328208.1

13